UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALVINA M. CURIEL,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br><br>   Defendant. | Case No. 15-cv-05165-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 18, 19 |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Alvina M. Curiel seeks judicial review of the Social Security Administration's ("SSA") final decision denying her applications for disability insurance benefits and supplemental security income. Currently pending before the Court are the parties' cross-motions for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **DENIES** Ms. Curiel's motion and **GRANTS** the SSA's.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In May and June 2012, Ms. Curiel filed applications for disability insurance benefits and supplemental security income. In both applications, she alleged disability beginning August 10, 2010. *See* AR 352-59. The SSA initially denied the claims in October 2012, and again upon reconsideration in May 2013. *See* AR 142-43, 182-83. Ms. Curiel then sought a hearing before an administrative law judge ("ALJ"). *See* AR 252-57.

ALJ Richard P. Laverdure held a hearing on Ms. Curiel's applications in February 2014. *See* AR 66-100. Ms. Curiel appeared and testified at the hearing. An independent medical expert and a vocational expert also testified at the hearing. A supplemental hearing was thereafter held in March 2014, during which Ms. Curiel provided additional testimony. *See* AR 57-65.

1  Subsequently, on June 20, 2014, the ALJ issued his decision, concluding that Ms. Curiel was not

2  disabled under the Social Security Act. *See* AR 22-37.

3         In his decision, AJL Laverdure applied the five-step sequential evaluation process for

4  determining whether an individual is disabled within the meaning of the Social Security Act. *See*

5  20 C.F.R. §§ 404.1520(a); 416.920(a). At step one, the ALJ found that there was insufficient

6  evidence to determine whether Ms. Curiel had engaged in substantial gainful activity since August

7  10, 2010, the alleged onset date for disability. *See* AR 27. However, the ALJ effectively assumed

8  that, for purposes of his opinion, Ms. Curiel had not and proceeded to step two.

9         At step two, the ALJ found that Ms. Curiel had "the following severe impairments:

10  obesity, bilateral knee degenerative joint disease and arthritis, alcohol dependence, depressive

11  disorder NOS [not otherwise specified], anxiety disorder NOS, [and] Borderline Intellectual

12  Functioning (BIF)." AR at 28. At step three, the ALJ determined that Ms. Curiel did not have an

13  impairment or combination of impairments that met or medically equaled the severity of the listed

14  impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* AR 28.

15         At step four, the ALJ concluded that, based on her medical impairments, Ms. Curiel had

16  the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 CFR [§§]

17  404.1567(a) and 416.967(a) except she should avoid concentrated exposure to chemical fumes,

18  odors, dusts and gases, and is limited to simple, repetitive, tasks with only occasional public

19  interaction."[1] AR 30. He then held that, based on that RFC, Ms. Curiel was not able to perform

20  any of her past relevant work, as that work constituted light, rather than sedentary, work. *See* AR

21  36.

22         At step five, however, the ALJ determined that Ms. Curiel was not disabled. *See* AR 36.

23  In making this determination, the ALJ relied on the Medical-Vocational Guidelines, also known as

24  the "grids." The grids set forth rules that identify whether jobs requiring a specific combination of

---

[1] In reaching this conclusion, the ALJ found Ms. Curiel to be only partially credible. *See, e.g.*, AR 31 ("I find that the claimant's medically determinable impairments could reasonably be expected to cause some alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.").

2

1 four factors (namely, RFC, age, work experience, and education) exist in significant numbers in
2 the national economy. *See Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). More
3 specifically,

> [f]or claimants found capable of sedentary, light, or medium work, the [Social Security] regulations provide three grids, one corresponding to each level of residual functional capacity. These grids account for the vocational factors of age, education, and work experience . . . The ALJ determines a claimant's age, education, and work experience and reads from the appropriate table and line the conclusion of whether the claimant is disabled.

*Calvin v. Heckler*, 782 F.2d 802, 804 (9th Cir. 1986); *see also Vanley v. Astrue*, No. 2:12-cv-00791 CKD, 2013 U.S. Dist. LEXIS 84956, at *30 (E.D. Cal. June 17, 2013) (noting that factors under the grids "include the claimant's residual functional capacity, age, education, and work experience" and, "[f]or each combination, the grids direct a finding of either 'disabled' or 'not disabled'").

> Because the grids are merely an administrative tool to resolve individual claims that fall into standardized patterns, there are limits on when the ALJ may rely on them. "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."

*Id.*; *see also Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988) (noting that "[t]he grids are an administrative tool the [SSA] may rely on when considering claimants with substantially uniform levels of impairment"). "When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai*, 499 F.3d at 1075.

In Ms. Curiel's case, the ALJ noted that, if she had the RFC "to perform the full range of sedentary work, considering [her] age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.25." AR 36. But, the ALJ acknowledged, Ms. Curiel's RFC included nonexertional limitations – *i.e.*, that "she should avoid concentrated exposure to chemical fumes, odors, dusts and gases, and is limited to simple, repetitive, tasks with only occasional public interaction." AR 30. Nevertheless, the ALJ explained that

> the additional limitations have little or no effect on the occupational base of unskilled sedentary work. A finding of "not disabled" is therefore appropriate under the framework of [Medical-Vocational Rule 201.25]. The limitation to simple repetitive tasks has no effect on the occupational base of unskilled sedentary work because the claimant is still capable of the basic mental work-related activities, namely understanding, carrying out, and remembering simple instructions; making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decision; responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting (Social Security Ruling ["SSR"] 96-9p). In addition, the limitation of no concentrated exposure to pulmonary irritants also has no effect on the occupational base of sedentary work because the vast majority of sedentary occupations are performed indoors, so outside environmental limitations (like pollen, dust or smoke) are not significant (SSR 83-14). A finding of "not disabled" is therefore appropriate under the framework of this rule.

AR 36-37.

Ms. Curiel now appeals.

## II.   STANDARD OF REVIEW

After a final decision by the SSA, a claimant may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). District courts "shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the [SSA], with or without remanding the case for a hearing." *Id.* The SSA's decision will be disturbed only if the ALJ has committed legal error or if the ALJ's findings are not supported by substantial evidence. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) ("We will uphold the Commissioner's denial of benefits if the Commissioner applied the correct legal standards and substantial evidence supports the decision."). Substantial evidence is relevant evidence – "more than a scintilla, but less than a preponderance" – that a reasonable mind may accept to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). A court evaluates "the record as a whole, . . . weighing both the evidence that supports and detracts from the ALJ's conclusion" to determine if substantial evidence supports a finding. *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001). If the evidence supports "more than one rational interpretation," the Court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

4

### III.   DISCUSSION

As an initial matter, the Court takes note of what Ms. Curiel does *not* challenge in the instant proceedings. She does not contest, *e.g.*, the ALJ's assessment of the medical evidence, the ALJ's findings on her credibility, or the ALJ's RFC determination. The only action of the ALJ that is at issue in this case is his reliance (at step five) on the Medical-Vocational Guidelines, or grids, as a framework for finding her not disabled. According to Ms. Curiel, the ALJ could not rely solely on the grids and should have called upon the services of a vocational expert because she has nonexertional limitations (as reflected in the ALJ's RFC determination) that are not accounted for in the grids and prevent her from performing the full range of sedentary work. *Cf. Vickers v. Colvin*, No. EDCV 12-1445 AJW, 2013 WL 3071257, at * 5 (C.D. Cal. June 18, 2013) (stating that, "[w]hen a claimant's exertional limitations put [her] between two rules,' and 'the exact place that [she] falls is difficult to determine as [she] also suffers from nonexertional limitations,' eliciting testimony from a vocational expert is appropriate"); SSR 83-12, *available at* 1983 WL 31253, at * 1-2 (stating that "[t]he table rules do not direct such conclusions [determining disability] when an individual's exertional RFC does not coincide with the exertional criteria of any one of the external ranges, i.e., sedentary, light, and medium, as defined in sections 404.1567 and 416.967 of the regulations"; adding that, "[w]here an individual's exertional RFC does not coincide with the definition of any one of the ranges of work [*e.g.*, sedentary, light, etc.], the occupational base is affected" and, "[w]here the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource"); SSR 83-14, *available* at 1983 WL 32154, at * 4-6 (noting that, where there is a sedentary exertion limitation combined with a nonexertional limitation, the assistance of a vocational specialist may be needed).

As explained by the Ninth Circuit, the mere fact of a nonexertional limitation "does not automatically preclude application of the grids." *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 577 (9th Cir. 1988). Rather, the question is whether "a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." *Id.*; *see also Burkhart*, 856 F.2d at 1340 (noting that the grids are inapplicable "[w]hen a claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range of work

5

permitted by the claimant's exertional limitations"*).* A vocational expert is required "only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid."[2]  *Hoopai*, 499 F.3d at 1076.

As noted above, the only nonexertional limitations at issue in Ms. Curiel's case are the following: (1) Ms. Curiel "is limited to simple, repetitive, tasks with only occasional public interaction" and (2) she "should avoid concentrated exposure to chemical fumes, odors, dusts and gases." AR 30. As discussed below, neither of these nonexertional limitations are significant or sufficiently severe.

For example, the restriction to nonpublic, simple, repetitive tasks is not significant because that still leaves Ms. Curiel free to engage in unskilled sedentary work. Unskilled work, by definition, is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a), 416.968(a). The Social Security regulations indicate that there are significant numbers of unskilled sedentary occupations in the national economy. *See* 20 C.F.R. pt. 404, subpt. P, App. 2, § 201.00(a) (indicating that unskilled sedentary work comprises approximately 200 separate occupations, each representing numerous jobs in the national economy). The grids also indicate that there are significant numbers of unskilled sedentary occupations in the national economy. For example, the sedentary grid reflects that a claimant of Ms. Curiel's age (younger than 45 years) and education (less than high school), but with unskilled work experience or less, would still be deemed "not disabled." *See* 20 C.F.R. pt. 404, subpt. P, App. 2, § 201.24.

Consistent with the above, a number of courts have concluded that a nonexertional limitation to simple, repetitive, tasks does not significantly affect claimant's ability to engage in unskilled employment at a sedentary occupational level. *See Lopez v. Astrue*, No. C–09–03483 RMW, 2011 WL 3206958, at *8 (N.D. Cal. July 27, 2011) (noting that "a limitation to simple, routine, repetitive work is not inconsistent with the ability to perform unskilled work"); *see also*

---

[2] A step-two finding of a "severe" impairment is "not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe" such that an ALJ cannot rely exclusively on the grids. *Hoopai*, 499 F.3d at 1076.

*Angulo v. Colvin*, 577 Fed. App. 686, 687 (holding that a claimant's restriction to "nonpublic, simple, repetitive work" "did not significantly limit [the claimant's] ability to do unskilled light or sedentary work"; accordingly, the use of the grids, without any vocational expert, was appropriate); *cf. Whitfield v. Colvin*, 609 Fed. Appx. 490, 491 (9th Cir. 2015) (stating that "[t]he restriction to 'simple unskilled work . . . performed without public contact' did not significantly limit [claimant's] ability to perform unskilled light work"). AR 533. The kinds of jobs listed in the VE report include, *e.g.*, "lens-block gauger," "table worker," and "addresser." Ms. Curiel's restriction related to public contact is not significant or sufficiently severe either. *See* SSR 85-15, *available at* 1985 WL 56857, at *4 (noting that unskilled "jobs ordinarily involve dealing primarily with objects, rather than with data or people"); *cf. Garcia v. Comm'r of Soc. Sec.*, 587 Fed. Appx. 367, 370 (9th Cir. 2014) (noting that unskilled light work "generally requires interaction with objects rather than people").

As for Ms. Curiel's nonexertional limitation of avoiding "concentrated exposure to temperature extremes, fumes, odors, dusts and gases and hazards," it likewise does not significantly limit her ability to perform unskilled sedentary labor. AR 35; *cf.* SSR 83-12, *available at* 1983 WL 31253, at *3 (stating that, "[w]here a person can perform all of the requirements of sedentary work except, for example, a restriction to avoid frequent contact with petroleum based solvents, there is an insignificant compromise of the full range of sedentary work"). "Where a person has a medical restriction to avoid excessive amounts of . . . dust . . . , the impact on the broad world of work would be minimal because most job environments do not involve great . . . amounts of dust." SSR 85-15, *available at* 1985 WL 56857, at *8. The same can be said with respect to fumes, odors, gases, and hazards, particularly as Ms. Curiel's restriction involves concentrated exposure to such. *See, e.g.*, *Vanley*, 2013 WL 3061268, at *10 (finding claimant's inability to tolerate "concentrated exposure" to respiratory irritants minimally impacted the claimant's light occupational base); *Welsh v. Astrue,* No. CV 09–6509 AGR, 2011 WL 3664998, at *6-7 (C.D. Cal. Aug. 22, 2011) (finding claimant's nonexertional limitations of *no exposure* to pulmonary irritants had little impact on the occupational base of unskilled light work). Finally, the restriction regarding temperature extremes is minor, given that the majority of

7

sedentary jobs are performed indoors. *Cf.* SSR 83-14, *available at* 1983 WL 31254, at *4 (noting that "the overwhelming majority of sedentary jobs are performed indoors" such that a restriction of avoiding exposure to ragweed pollen is not significant).

Ms. Curiel tries to distinguish some of the above cases, noting, *e.g.*, that, in *Hoopai*, *Lopez*, *Garcia*, *Whitfield*, and *Angulo*, the RFC of the claimants was light work and not sedentary (as in her case). While that is true, Ms. Curiel has failed to explain how this is a material distinction. Ms. Curiel points out that the number of unskilled occupations for sedentary work alone is clearly smaller than the number of unskilled occupations for both light and sedentary work combined (*i.e.*, a person capable of performing unskilled light work is necessarily capable of performing unskilled work at a lesser exertional level[3]), *see* 20 C.F.R. pt. 404, subpt. P, App. 2, §§ 201.00(a), 202.00(a) (indicating that there are approximately 200 identified sedentary unskilled occupations and that there are approximately, 1,600 identified sedentary *and* light unskilled occupations), but that fact is not dispositive. The question is whether there are a significant number of jobs at the unskilled sedentary level; that there are more unskilled light than unskilled sedentary jobs is not material.

Ms. Curiel also relies on *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999), in support of her case, but that authority, if anything, supports the SSA. Notably, the *Tackett* court underscored that the assertion of a nonexertional limitation, "does not automatically preclude application of the grids," except when the nonexertional impairment is "sufficiently severe" to "significantly limit the range of work permitted." *Id.* at 1102. Moreover, the nonexertional limitation at issue in *Tackett* was significantly more serious than those at issue in the instant case – involving a need to shift positions every 30 minutes. *See id.* at 1103-04 (noting that, "to be physically able to work the full range of sedentary jobs, the worker must be able to sit through most or all of an eight hour day" but the plaintiff needed "to shift, stand up, or walk around every 30 minutes"; "[i]t is easy to imagine the problems this non-exertional limitation would cause in many sedentary jobs which require sitting during most or all of an eight hour day such as some assembly line jobs, or jobs as a phone operator or dispatcher"). Similarly, other cases that found sufficiently severe nonexertional

---

[3] *See* 20 C.F.R. pt. 404, subpt. P, App. 2, § 202.00(a) ("The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work").

limitations rendering reliance on the grids inapplicable dealt with significantly more serious impairments than that in the instant case. *See, e.g.*, *Jones v. Heckler*, 760 F.2d 993 (9th Cir. 1985) (finding claimant's visual impairments, difficulty with manual manipulation and dexterity, and epilepsy were *each* sufficiently severe nonexertional impairments that significantly limited claimant's ability to perform the full range of light and sedentary work); *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001) (finding claimant's inability to lift his arms above ninety degrees may be considered a nonexertional limitation that makes reliance on the grids inapplicable).

Finally, the Court takes note that, even though Ms. Curiel's complaint is that a vocational expert should have been consulted, the ALJ here did seek the opinion of such an expert, taking testimony from consulting Vocational Expert Joel Greenberg. *See* AR 93-94. Mr. Greenberg considered the nonexertional limitations at issue and still found Ms. Curiel not disabled, albeit based on a light work RFC rather than a sedentary RFC (as the ALJ ultimately concluded). It is hard to imagine that, if the vocational expert was not troubled by the nonexertional limitations with light work, he would somehow reach a different conclusion for sedentary work.

### IV. CONCLUSION

For the foregoing reasons, Ms. Curiel's motion for summary judgment is **DENIED** and the Commissioner's cross-motion for summary judgment is **GRANTED**. The Clerk is instructed to enter judgment and close the file.

This order disposes of Docket Nos. 18 and 19.

**IT IS SO ORDERED**.

Dated: August 2, 2016

_____
EDWARD M. CHEN
United States District Judge